## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KRISTEN H. COLINDRES,** *et al.*, | |
| **Plaintiffs,** | |
| v. | **Case No. 21-cv-348 (GMH)** |
| **U.S. DEPARTMENT OF STATE,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs are a long-married couple with a young daughter who lived together in the United States for more than thirteen years. Plaintiff Kristen H. Colindres is a United States citizen. Her spouse, Plaintiff Edvin A. Colindres Juarez ("Colindres Juarez"), is a citizen of Guatemala who, after returning to his native country for a consular interview—one of the final steps in procuring a U.S. immigrant visa—was denied such a visa by the United States Embassy in Guatemala City on the basis that there is a reasonable ground to believe he seeks to enter the United States to engage in unlawful activity. *See* 8 U.S.C. § 1182(a)(3)(A)(ii).[1] Plaintiffs' primary argument is that the decision denying Colindres Juarez a visa violates their Fifth Amendment right to "[f]reedom of personal choice in matters of marriage and family life" because it was not based on a facially legitimate and bona fide reason (ECF No. 2, ¶¶ 40–45), although they also assert some additional constitutional and statutory claims. In response, Defendants—the Department of State, the Secretary of State, and the Consul General of the United States in Guatemala City (collectively, "Defendants" or the "government") contend that the bulk of Plaintiffs' claims either fail under the

---

[1] The provision under which Colindres Juarez has been deemed inadmissible is also known as Section 212(a)(3)(A)(ii) of the Immigration and Nationality Act ("INA").

doctrine of "consular non-reviewability" or, at the very least, cannot survive the constricted judicial review permitted when there is a plausible claim that the consular decision violated a plaintiff's constitutional rights.

The Court does not take lightly the allegations of hardship that a consular official's decision to deny Colindres Juarez a visa has worked upon Plaintiffs and their child.  However, the outcome here is largely dictated by controlling Supreme Court and D.C. Circuit precedent.  Defendants' motion to dismiss must therefore be granted.[2]

## I.    BACKGROUND

According to the complaint,[3] Colindres Juarez, a Guatemalan citizen born in 1980, was raised in Guatemala until he was fourteen years old, when he entered the United States "without inspection" and moved to New York City to live with family.  ECF No. 2, ¶¶ 4, 15–17; ECF No. 1-1 at 2.  A few years later, he relocated to Jacksonville, Florida.  ECF No. 2, ¶ 17.  In December 2006, he married Colindres, who is a United States citizen.  *Id.*, ¶¶ 19, 22.  They have a daughter who was born in 2008.  *Id.*, ¶ 23.

In March 2015, Colindres filed with the U.S. Citizenship and Immigration Service ("USCIS") a Form I-130 for the benefit of her husband, which is the first step in the process of "helping an eligible relative apply to immigrate to the United States and get [a] Green Card."  *Id.*, ¶ 24; *I-130, Petition for Alien Relative* (Nov. 24, 2021), https://www.uscis.gov/i-130.  That petition was approved in August 2015.  ECF No. 2, ¶ 25.  In May 2018, Colindres Juarez filed with USCIS

---

[2] The docket entries relevant to the resolution of this motion are (1) Plaintiffs' operative complaint and its exhibits (ECF Nos. 1–2); (2) Defendants' motion to dismiss (ECF No. 10); (3) Plaintiffs' opposition to the motion to dismiss (ECF No. 16); and (4) Defendants' reply in further support of their motion (ECF No. 20).  Page numbers cited herein are those assigned by the Court's CM/ECF system.

[3] Plaintiffs first filed their complaint and accompanying exhibits on February 8, 2021 (ECF No. 1), but it was rejected by the Clerk of Court for failure to comply with Local Civil Rule 5.1(c)(1), which requires the caption of a complaint to include the full address of each party.  Notice of Error (Feb. 9, 2021); *see also* LCvR 5.1(c)(1).  Plaintiffs then filed a compliant copy of the complaint (minus the attachments) as directed by the Clerk's Office.  ECF No. 2.

a Form I-601A requesting a "provisional waiver of the unlawful presence grounds of inadmissibility" under the INA "before departing the United States to appear at a U.S. Embassy or Consulate for an immigration visa interview." *Id.*, ¶ 26; *I-160A, Application for Provisional Unlawful Presence Waiver* (Oct. 18, 2021), https://www.uscis.gov/i-601a.  Colindres thereafter submitted to fingerprinting for the purposes of background checks, including a criminal history check against the records of the Federal Bureau of Investigation.  ECF No. 2, ¶ 27.  USCIS approved his provisional waiver application in January 2019.  *Id.*, ¶ 28.  In April 2019, Colindres Juarez filed with the Department of State a Form DS-260, Immigrant Visa and Alien Registration Application; he paid all required fees, submitted all required additional forms, and responded to all requests for evidence by the National Visa Center.  *Id.*, ¶¶ 29–30.

In June 2019, Colindres Juarez traveled to Guatemala for the purposes of his consular interview, which was held in early July 2019.  *Id.*, ¶¶ 30–31.  Pursuant to the embassy's request, he submitted his criminal record file from the Public Ministry of Guatemala, which was clean.  *Id.*, ¶¶ 32, 34–35.  He attended a follow-up interview on August 8, 2019.  *Id.*, ¶ 33; ECF No. 1-1 at 83.  His counsel inquired about the status of his application repeatedly during the following months.  ECF No. 2, ¶ 36.  At the end of April 2020, his counsel sought assistance from the Office of the Legal Advisor for Consular Affairs,[4] noting that Colindres Juarez had been "stuck in Guatemala for nine months due to administrative processing" of his visa application and indicating that the hold-up might be "due to a tattoo that an adjudicating officer found suspicious."  ECF No. 1-1 at 70. On May 6, 2020, the embassy informed Colindres that her husband had been "formally refused

---

[4] Specifically, Plaintiffs' counsel sent an email to LegalNet@State.gov, a "dedicated email channel" through which "applicants and their representatives of record may pose legal questions regarding pending or recently completed visa cases." 9 Foreign Affairs Manual §§ 103.4-1, 103.4-2, *available at* https://fam.state.gov/fam/09FAM/09FAM010304.html (last visited Dec. 14, 2021); *see also* ECF No. 1-1 at 70.

a visa under section 212(a)(3)(A)(ii) of the [INA] as an alien for whom there is reason to believe is a member of a known criminal organization."  ECF No. 2, ¶ 37; *see also* ECF No. 1-1 at 68.

Plaintiffs sought reconsideration of the decision denying Colindres Juarez an immigrant visa from the Immigrant Visa Section of the U.S. Embassy in Guatemala in September 2020.  ECF No. 1-1.  That application included letters of support from numerous members of his family—his wife, his daughter, his mother- and father-in-law, and various aunts, uncles and cousins, including the aunt and uncle who served as guardians for him when he came to the United States (*id.* at 97–100, 104–06, 108–09, 111, 113, 114–21, 123–24, 176–78, 192); family friends, one of whom had known him since high school (*id.* at 95–96, 101–03, 122, 125, 138–39); co-workers (*id.* at 126–136); and his priest (*id.* at 94).  It also included a submission asserting that none of his tattoos were gang-related and explaining the meaning of each of them (*id.* at 141–52) and a series of photographs of him with his wife and child (*id.* at 154–72).  Plaintiffs' counsel contacted the embassy for an update at the end of November 2020 and was informed that Colindres Juarez's "case [had] been given to the new arrived Immigrant Visa Chief who [would] review it in the coming weeks."  ECF No. 1-2 at 2.  The request for reconsideration was denied in December 2020.  *Id.* at 4.

In February 2021, Plaintiffs filed their complaint in this Court.  It alleges that "[t]he Embassy's refusal of [ ] Colindres Juarez's request for an immigrant visa . . . implicates fundamental constitutional rights," particularly the "[f]reedom of personal choice in matters of marriage and family life" guaranteed to U.S. citizens.  ECF No. 2, ¶¶ 42, 45.  Based on that "straightforward notion" (*id.*, ¶ 44 (internal quotation marks omitted)), Plaintiffs allege that the government has violated the constitutionally protected rights to substantive due process; procedural due process; equal protection of the laws; and freedom speech, expression, and association.  *Id.*, ¶¶ 86–108.

4

They further contend that the decision denying Colindres Juarez a visa was neither facially legiti-mate nor bona fide, as required by Constitution, but rather made in bad faith; that the decision violates the INA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*; and that the provision pursuant to which Colindres Juarez was deemed inadmissible—8 U.S.C. § 1182(a)(3)(A)(ii), which states that an alien is ineligible for a visa if he or she seeks to enter the United States "to engage solely, principally, or incidentally" in "unlawful activity"—is unconsti-tutionally vague. *Id.*, ¶¶ 109–141.

The government moved to dismiss the complaint, contending that because Plaintiffs have not plausibly alleged a constitutional violation, the doctrine of consular non-reviewability prohibits judicial review of the decision; that, even if they had plausibly alleged a constitutional violation, the decision was facially legitimate and bona fide, and thus satisfies the limited judicial review allowed of visa denials that burden a constitutional right; that Plaintiffs' statutory claims fail; and that the provision of the INA under which Colindres Juarez was deemed inadmissible is not un-constitutionally vague.  ECF No. 10.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted.[5]  Fed. R. Civ. P. 12(b)(6).  A court reviewing a 12(b)(6) motion must accept as true the well-pleaded factual allegations con-tained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and construe those allegations "in the light most favorable to the plaintiff[ ]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016).  While the plaintiff need not make "detailed factual allegations"

---

[5] The D.C. Circuit recently confirmed that a "[d]ismissal based on consular nonreviewability [ ] is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)," rather than a dismissal for lack of jurisdiction pursuant to Rule 12(b)(1).  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021).

to avoid dismissal, he or she must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To meet this standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition to the allegations of the complaint, a court evaluating a motion under Rule 12(b)(6) may also consider "any documents either attached to or incorporated in the complaint[] and matters of which [the court] may take judicial notice." *Vasaturo v. Peterka*, 177 F. Supp. 3d 509, 511 (D.D.C. 2016) (second alteration in original) (quoting *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). More, when it is clear that "the facts alleged in a [claim] would not entitle the plaintiff to relief, a court may dismiss those claims *sua sponte*," *James v. District of Columbia*, 869 F. Supp. 2d 119, 122 (D.D.C. 2012), even if the defendant fails to address that claim in its briefing, *see Singh v. District of Columbia*, 881 F. Supp. 2d 76, 87 n.4 (D.D.C. 2012).

## III.   DISCUSSION

### A.   Vagueness

Before analyzing whether the consular non-reviewability doctrine insulates the decision at issue, the Court addresses Plaintiffs' allegation that the statutory provision under which Colindres Juarez was denied entry—8 U.S.C. § 1182(a)(3)(A)(ii)—is unconstitutionally vague. ECF No. 2, ¶¶ 138–141. That subsection provides that "[a]ny alien who a consular official or the Attorney General knows, or has reasonable grounds to believe, seeks to enter the United States to engage

solely, principally, or incidentally in . . . any other unlawful activity" is ineligible to receive a visa. 8 U.S.C. § 1182(a)(3)(A)(ii).

The government moves to dismiss this claim, citing *Boutilier v. INS*, 387 U.S. 118 (1967). In that case, the Supreme Court rejected a vagueness challenge to a statutory provision that made those "afflicted with psychopathic personality"—a "term of art intended to exclude homosexuals from entry into the United States"—excludable and therefore authorized the deportation of the appellant. *Id.* at 118–19. The Court asserted that "[t]he constitutional requirement of fair warning has no applicability to standards such as are laid down in [that provision] for admission of aliens to the United States. It has long been held that the Congress has plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Id.* at 123 (citing The Chinese Exclusion Case, *Ping v. United States*, 130 U.S. 581 (1889)). *Boutilier* (along with The Chinese Exclusion Case on which it relies) has rightfully been criticized as "condon[ing] . . . the most blatant discrimination." *Tineo v. Att'y Gen. of the U.S.*, 937 F.3d 200, 216–17 (3d Cir. 2019). And, indeed, "while continuing to recognize the broad deference owed to Congress in immigration matters, the Supreme Court has in recent years cur-tailed the plenary-power doctrine's excesses," recognizing that the doctrine "is subject to important constitutional limitations." *Id.* at 217 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001)) (first citing *Sessions v. Morales-Santana*, __ U.S. __, __, 137 S. Ct. 1678, 1693–94 (2017), and then citing *INS v. Chadha*, 462 U.S. 919, 940–41 (1983)); *see also Sessions v. Dimaya*, __ U.S. __, __, 138 S. Ct. 1204, 1213 (2018) (applying the "most exacting vagueness standard" to a provision of the INA). The government's decision to rest its four-sentence argument in favor of dismissal of Plaintiffs' vagueness challenge entirely on the quoted language from *Boutillier* is of questionable

merit.  *See* ECF No. 10-1 at 17–18.  Nevertheless, Plaintiffs' vagueness challenge does not succeed for two independent reasons.

First, Plaintiffs have conceded the government's argument that section 1182(a)(3)(A)(ii) is not impermissibly vague by failing to address it in their opposition.  *See, e.g.*, *Bautista-Rosario v. Mnuchin*, __ F. Supp. 3d __, __, 2021 WL 4306093, at \*5 (D.D.C. 2021) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." (alteration in original) (quoting *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012))); *Wash. Alliance of Tech. Workers v. Dep't of Homeland Sec.*, 518 F. Supp. 3d 448, 459 n.4 (D.D.C. 2021) (same).

Second, the vagueness challenge fails on the merits.  "The void-for-vagueness doctrine 'guarantees that ordinary people have "fair notice" of the conduct a statute proscribes.'"  *Muñoz v. Dep't of State*, 526 F. Supp. 3d 709, 723 (C.D. Cal. 2021) (quoting *Dimaya*, __ U.S. at __, 138 S. Ct. at 1212), *appeal filed*, No. 21-55365 (9th Cir. Apr. 16, 2021).  "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."  *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  A statute threatens First Amendment interests if the conduct it prohibits "implicate[s] First Amendment considerations."  *United States v. Kanchanalak*, 192 F.3d 1037, 1041 n.6 (D.C. Cir. 1999); *see also, e.g.*, *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020) ("[A] challenger may raise a facial challenge if the statute implicates rights protected by the First Amendment[.]").  Plaintiffs have made no argument that *the provision itself*, which makes ineligible for a visa a person whom the government has reason to believe seeks entry to the United States in order to engage in criminal activity, burdens any rights guaranteed by the First Amendment.[6]  Thus any

---

[6] Plaintiffs have, on the other hand, attempted to raise a claim that the consular official's *denial of the visa* implicates their First Amendment rights.  ECF No. 2, ¶¶ 106–108 (making clear that Plaintiffs challenge the allegedly unlawful

facial challenge to section 1182(a)(3)(A)(ii) fails here.  Nor have Plaintiffs shown that the statute is unconstitutionally vague as applied to Colindres Juarez.

A court in the Central District of California recently addressed a strikingly similar issue. The plaintiffs were a citizen of El Salvador and his U.S. citizen spouse; like Colindres Juarez, the El Salvadoran was denied an immigrant visa on the basis of Section 1182(a)(3)(A)(ii).  *Munoz*, 526 F. Supp. 3d at 713–14.  The couple challenged the denial of his visa asserting, among other things, that the provision was void for vagueness.  *Id.* at 723–26.  The District Court granted summary judgment for the government, finding that the statute was not unconstitutionally vague as applied to the plaintiffs:

> Although the language of this provision certainly could be construed to encompass innumerable grounds for ineligibility, the consular officer here did not apply the statute because [the non-citizen plaintiff] might incidentally partake in jaywalking, or any other potentially unreasonable grounds for denial of entry. Instead, the officer found [him] inadmissible under § 1182(a)(3)(A)(ii) because the officer determined that [he] was a member of MS-13, a recognized transnational criminal organization known for posing a threat to the safety and security of U.S. citizens.  A person of average intelligence would reasonably understand that membership in such an organization would imply an engagement in unlawful activity, at the very least, and thus render him ineligible for entry under § 1182(a)(3)(A)(ii).

*Id.* at 726.

So it is here.  Colindres Juarez was denied a visa under Section 1182(a)(3)(A)(ii) on the basis that there was reason to believe that he was "a member of a known criminal organization." ECF No. 2, ¶ 37; *see also* ECF No. 1-1 at 68.  "[A] person of average intelligence would reasonably understand that the [identified conduct]"—being a member of a known criminal organization who would engage in criminal conduct in the United States—"is proscribed."  *United States v. Singhal*, 876 F. Supp. 2d 82, 98 (D.D.C. 2012); *see also Schall v. Martin*, 467 U.S. 253, 278–79 (1984)

---

denial of a visa as infringing First Amendment rights, rather than arguing that section 1182(a)(3)(A)(ii) infringes on rights guaranteed by the First Amendment).  As discussed below, *infra* Section III.B.3, that claim also founders.

(rejecting a challenge that a statute was unconstitutionally vague because it authorized detention based on future criminal conduct).  The Court therefore rejects Plaintiffs' void-for-vagueness challenge.

### B.      Consular Non-Reviewability

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise," because "such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'"  *Baan Rao Thai Rest.*, 985 F.3d at 1024 (quoting *Trump v. Hawaii*, __ U.S. __, __, 138 S. Ct. 2392, 2418–19 (2018)).  In the INA, Congress "partially delegated to the Executive its power to make rules for the admission and exclusion of noncitizens" by "grant[ing] consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Id.* (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). Notwithstanding that broad shield, courts—including the Supreme Court—have recognized that claims that would otherwise be barred by the doctrine are subject to limited judicial review where a U.S. citizen "challenge[s] the exclusion of a noncitizen [because] it burdens the citizen's constitutional rights."  *Id.*; *see, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (assessing "whether the First Amendment confers upon the appellee professors, because they wish to hear, speak, and debate with Mandel in person, the ability to . . . compel the Attorney General to allow Mandel's admission" to the United States).  Additionally, a plaintiff may challenge a consular decision denying admission "if a 'statute expressly authoriz[es] judicial review of consular officers' actions.'"  *Baan Rao Thai Rest.*, 985 F.3d at 1025 (quoting *Saavedra Bruno*, 197 F.3d at 1159).  However, even where the plaintiff has made a plausible claim that the consular decision can be judicially reviewed, that review is limited to a determination of whether the consular official has "exercise[d]

[that] power negatively on the basis of a facially legitimate and bona fide reason." *Mandel*, 408 U.S. at 770; *see also Kerry v. Din*, 576 U.S. 86, 104 (2015) (Kennedy, J., concurring in the judgment) ("*Mandel* held that an executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made 'on the basis of a facially legitimate and bona fide reason.'" (quoting *Mandel*, 408 U.S. at 770)).

Plaintiffs' main argument here is that "the consular officer's refusal to issue [ ] Colindres Juarez an immigrant visa" violates Colindres' Fifth Amendment protection against deprivation of liberty without due process of law, specifically, her right to "[f]reedom of personal choice in matters of marriage and family life."[7]  ECF No. 16 at 11–12.  The complaint further alleges that the visa denial violates the prohibition of equal protection of the laws; infringes on Plaintiffs' rights "to free speech, expression and association" under the First Amendment; and violates both the INA and the APA.  ECF No. 2, ¶¶ 98–124.

### 1.    Due Process

The Constitution safeguards two varieties of due process rights.  The guarantee of "[s]ubstantive due process 'prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests.'"  *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 85–86 (D.D.C. 2017) (second alteration in original) (quoting *Wash. Local Teacher's Union #6 v. Bd. of Educ. of D.C.*, 109 F.3d 774, 781 (D.C. Cir. 1997)).  "To succeed on a substantive due process claim, a plaintiff must prove 'egregious government misconduct' that deprives [her] of a liberty or property interest."  *Id.* at 85 (quoting *George Washington Univ. v. District of*

---

[7] "[A]s a foreign national residing outside of the United States, [Colindres Juarez] does not have constitutional rights implicated by the denial of [his] visa."  *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 132 (D.D.C. 2019) (collecting cases), *aff'd*, No. 19-5263, 2020 WL 2610600 (D.C. Cir. May 15, 2020) (per curiam).

*Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003)).  "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton*, 567 F.3d at 689.  Both types of due process violations require, "[a]s a threshold matter," an allegation that the plaintiff has been "deprived of a fundamental right or liberty or property interest." *Toms v. Office of the Architect of the Capitol*, 650 F. Supp. 2d 11, 25 n.11 (D.D.C. 2009) (addressing substantive due process claims); *Rangel v. Boehner*, 20 F. Supp. 3d 148, 166 (D.D.C. 2013) ("It is the deprivation of a liberty or property interest [ ] that triggers procedural due process requirements . . . ."); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'").  Plaintiffs' allegations here do not clear that initial hurdle.

In *Swartz v. Rogers*, the D.C. Circuit addressed a claim that a wife's due process rights under the Fifth Amendment prevented the deportation of her husband.  254 F.2d 338, 339 (D.C. Cir. 1958).  She argued "that the due process clause gave her a right, upon marriage, to establish a home, create a family, have the society and devotion of her husband, etc.; and that to deport her husband . . . would unconstitutionally destroy that marital status." *Id.*  The court rejected that argument, stating:

> Certainly deportation would put burdens on the marriage.  It would impose upon the wife the choice of living abroad with her husband  or living in this country without him.  But deportation would not in any way destroy the legal union which the marriage created.  The physical conditions of the marriage may change, but the marriage continues.  Under these circumstances we think the wife has no constitutional right which is violated by the deportation of her husband.[8]

---

[8] A number of other Circuits have come to similar conclusions. *See, e.g.*, *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006) ("Plaintiffs assert that the Constitution grants them a liberty interest in their marriage, and thus, that the government must give them due process before denying Mrs. Bangura a visa.  While this Court recognizes that the Banguras have a fundamental right to marry, it does not agree with Plaintiffs' characterization of the nature of the government's infringement.  A denial of an immediate relative visa does not infringe on their right to marry."); *Bright v. Parra*, 919 F.2d 31, 34 (5th Cir. 1990) ("United States citizen spouses have no constitutional right to have their alien spouses remain in the United States."); *Burrafato v. Dep't of State*, 523 F.2d 554, 555 (2d Cir. 1975) ("[N]o

*Id.*  Based on the holding in *Swartz*, numerous courts in this District have dismissed the argument raised here, that denial of an alien spouse's visa implicates the due process rights of a citizen spouse.  *See, e.g.*, *Rohrbaugh*, 394 F. Supp. 3d at 133 ("Because the consular officer's decision to deny Mrs. Rohrbaugh's visa application did not interfere with Mr. Rohrbaugh's right to marry, controlling precedent establishes that he has not suffered a violation of his constitutional rights."); *Singh v. Tillerson*, 271 F. Supp. 3d 64, 71 (D.D.C. 2017) ("[W]hile the Constitution protects an individual's right to marry and the marital relationship, these constitutional rights are not implicated when a spouse is removed or denied entry to the United States." (citing *Swartz*, 254 F.2d at 339)); *Udogampola v. Jacobs*, 70 F. Supp 3d 33, 41 (D.D.C. 2014) ("[W]hile . . . the Constitution protects an individual's right to marry and the marital relationship, . . . 'these constitutional rights are not implicated when one spouse is removed or denied entry into the United States.'" (quoting *Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 105 (D.D.C. 2011) (citing, among other cases, *Swartz*, 254 F.2d at 339)); *Jathoul v. Clinton*, 880 F. Supp. 2d 168, 171–72 (D.D.C. 2012) (rejecting a claim that a U.S. citizen's constitutional rights were implicated when her spouse was denied a visa and noting that the court was "bound by *Swartz* . . . , which found no violation of a wife's constitutionally protected liberty interest in her marriage when her husband was deported because deportation would not in any way destroy the legal union which the marriage created'" (quoting *Swartz*, 254 F.2d at 339)); *Mostofi v. Napolitano*, 841 F. Supp. 2d 208, 211–12 (D.D.C. 2012) (rejecting the argument that the denial of her husband's visa application violated the plaintiff's

constitutional right of a citizen spouse is violated by deportation of his or her alien spouse." (citing *Swartz*, 254 F.2d 338)); *Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970) (rejecting the plaintiffs' argument that "to allow the government to refuse [an alien spouse] the right to reside in the United States would deprive [them] of their constitutional rights" (citing *Swartz*, 254 F.2d at 339)); *cf. Bakran v. Sec'y, Dep't of Homeland Sec.*, 894 F.3d 557, 564–65 (3d Cir. 2018) (rejecting the argument that a statutory provision that barred a U.S. citizen from petitioning to adjust his foreign spouse's immigration status infringed on his constitutional rights and citing *Swartz*, 254 F.2d at 339).

"constitutionally protected liberty interest in 'freedom of personal choice in matters of marriage and family life'" based on, among other cases, *Swartz* (quoting the complaint)).

To be sure, in *Bustamante v. Mukasey*, the Ninth Circuit held otherwise, finding that the denial of a visa to an alien spouse implicates a citizen's "[f]reedom of personal choice in matters of marriage and family." 531 F.3d 1059, 1062 (9th Cir. 2008). That court reaffirmed the principle in its decision in *Din v. Kerry*. *See* 718 F.3d 856, 860 (9th Cir. 2013) ("In *Bustamante*, we recognized that a citizen has a protected liberty interest in marriage that entitles the citizen to review of the denial of a spouse's visa."), *vacated and remanded*, 576 U.S. 86 (2015). The Supreme Court granted *certiorari* in that case and could have settled the Circuit split. *Kerry v. Din*, 573 U.S. 990 (2014) (granting *cert.*). However, "the Court fractured and ultimately left the question unresolved." *Rohrbaugh*, 394 F. Supp. 3d at 133. A plurality of three Justices who voted to reverse the Ninth Circuit squarely asserted that the denial of an alien's visa application does not deprive a citizen spouse of any constitutionally protected interest. *Din*, 576 U.S. at 101 (Scalia, J., announcing the judgment of the court and delivering an opinion). A concurrence in the judgment of two Justices explicitly refused to address that question, voting to reverse on the ground that the government had given a "facially legitimate and bona fide reason" for the denial, and thus provided all the process that was due. *Id.* at 104–06 (Kennedy, J. concurring in the judgment); *see also id.* at 102 ("Today's disposition should not be interpreted as deciding whether a citizen has a protected liberty interest in the visa application of her alien spouse."). The four dissenting Justices would have found a liberty interest in a citizen's "freedom to live together with her [spouse] in the United States" and also found that the government had not provided a facially legitimate and bona fide basis for the denial of the visa. *Id.* at 107, 113–16 (Breyer, J., dissenting). Thus, neither the Ninth Circuit's position that a citizen has the right to judicial review of a decision denying her spouse a

visa nor the D.C. Circuit's contrary position garnered the support of a majority of the Justices. Therefore, "this Court is bound by Circuit precedent" to find that Plaintiffs have failed to allege the deprivation of a constitutionally protected interest.  *Rohrbaugh*, 394 F. Supp. 3d at 133; *see also Zandieh v. Pompeo*, Civil Action No. 20-919, 2020 WL 4346915, at *7 (D.D.C. July 29, 2020) (stating, post-*Din*, that "courts in [this] Circuit are bound by *Swartz*"); *Singh*, 271 F. Supp. 3d at 71–72 (concluding, post-*Din*, "that the defendants' denial of Plaintiff's family members' visas did not implicate a liberty interest protected by the Fifth Amendment," relying on *Swartz*); *cf. Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 876 (D.C. Cir. 1992) ("[Circuit precedent] bind[s] the circuit 'unless and until overturned by the court en banc or by Higher Authority." (quoting *Save Our Cumberland Mts., Inc. v. Hodel*, 826 F.2d 43, 54 (D.C. Cir. 1987))).[9]

Because Plaintiffs have not alleged that they were deprived of a constitutionally protected liberty interest, the due process clause of the Fifth Amendment cannot be the basis for applying the exception to consular non-reviewability for the exclusion of a non-citizen that "burdens [a] citizen's constitutional rights."  *Baan Rao Thai Rest.*, 985 F.3d at 1024.

2.      Equal Protection

Plaintiffs' equal protection argument fares no better.

---

[9] It is worth noting that the D.C. Circuit has not displayed an appetite to revisit the holding of *Swartz*.  Indeed, in 2020, the Circuit affirmed Judge Cooper's decision in *Rohrbaugh* relying (as did Judge Cooper) on *Swartz*.  *Rohrbaugh*, 2020 WL 2610600, at *1 ("This court has previously concluded that where the 'physical conditions of the marriage may change, but the marriage continues' a U.S. citizen has 'no constitutional right which is violated by the deportation of her husband.'  Thus, in the absence of a constitutionally protected interest that was violated by the consular officer's decision to deny Mrs. Rohrbaugh a visa, that decision is not subject to judicial review." (internal citation omitted) (quoting *Swartz*, 254 F.2d at 339)).  To be sure, that decision is unpublished.  However, it is also a summary disposition, which is appropriate only "where the merits of the appeal or petition for review are so clear that 'plenary briefing, oral argument, and the traditional collegiality of the decisional process would not affect [the] decision.'"  *Cascade Broad. Grp. Ltd. v. FCC*, 822 F.2d 1172, 1174 (D.C. Cir. 1987) (quoting *Sills v. Bureau of Prisons*, 761 F.2d 792, 793–94 (D.C. Cir. 1985)).  Thus, *Swartz*'s holding remains settled law in the D.C. Circuit.

Although the Fifth Amendment does not contain an equal protection clause, its due process clause "makes the Fourteenth Amendment's guarantee of equal protection applicable to federal entities." *Kim v. Brownlee*, 344 F. Supp. 2d 758, 760–61 (D.D.C. 2004) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 204 (1995), and *Bolling v Sharpe*, 347 U.S. 497 (1954)).  As noted, the operative complaint rests its constitutional claims primarily on the allegation that Colindres has a protected interest in "[f]reedom of personal choice in matters of marriage and family life." ECF No. 2, ¶ 45; *see also id.*, ¶ 43 ("United States citizens have a 'protected liberty interest in marriage that gives rise to a right to constitutionally adequate procedures in the adjudication' of a visa application." (quoting *Bustamante*, 531 F.3d at 1062)).  Those allegations have little to say about the Constitution's guarantee of equal protection.[10]  In any case, courts have held that "*no* constitutional right of a citizen spouse is violated by deportation or denial of a visa application of his or her alien spouse." *Gogliashvili v. Holder*, No. 11-CV-01502, 2012 WL 2394820, at *5 (E.D.N.Y. June 25, 2012) (emphasis added) (citing, among other cases, *Udugampola*, 795 F. Supp. 2d at 104–06); *see also, e.g.*, *Bright*, 919 F.2d at 34 ("United States citizen spouses have *no* constitutional right to have their alien spouses remain in the United States." (emphasis added)); *Burrafato*, 523 F.2d at 555 ("[*N*]o constitutional right of a citizen spouse is violated by deportation of his or her alien spouse." (emphasis added)).  If the denial of a visa to a non-citizen spouse does not infringe on *any* constitutional right of the citizen spouse, no equal protection claim can be made here. *See, e.g.*, *Singh*, 271 F. Supp. 3d at 71 ("[T]here is no statutory or constitutional right to

---

[10] Perhaps in light of this fact, the government's motion to dismiss appears to focus on Plaintiffs' due process arguments.  Plaintiffs recognize, however, that the government has moved to dismiss all of their claims pursuant to the doctrine of consular non-reviewability, no matter which constitutional guarantee is allegedly offended.  ECF No. 16 at 8 n.2 ("[T]he Government relies upon the doctrine of consular nonreviewability to wholesale argue Plaintiffs fail to state claims upon which relief can be granted . . . ."); *see also* ECF No. 10-1 at 11–12 (supporting the government's motion to dismiss with citations standing for the proposition that "*no* constitutional rights" are violated by the denial of an immigrant visa (emphasis added)); ECF No. 20 at 3–4 (same).

familial association with a person trying to immigrate to the United States.  On the contrary, various cases have shown that neither United States citizens nor lawful permanent residents have any due process or equal protection rights insofar as the deportation of their spouses or other family members." (quoting *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006))); *see also, e.g.*, *Al Khader v. Pompeo*, No. 18-cv-1355, 2020 WL 550606, at *9 (N.D. Ill. Feb. 4, 2020) (denying leave to amend the plaintiffs' equal protection claim as "legally barred" by the doctrine of consular non-reviewability).

Even if an equal protection claim were cognizable in these circumstances, Plaintiffs have not sufficiently pleaded one.  The complaint mentions equal protection only once in passing (ECF No. 2 at 1) before attempting to set out cause of action for a violation of the Fifth Amendment's guarantee with the following paragraphs:

98. The United States Constitution prohibits the denial of equal protection of the laws based on national origin, nationality, alienage and/or being a member of a discrete and insular minority.

99. There is no substantial justification for the Embassy's refusal to issue Plaintiff Colindres Juarez an immigrant visa, which was based solely on his national origin, nationality, alienage and/or being a member of a discrete and insular minority.

100. The Embassy's refusal to issue Plaintiff Colindres Juarez an immigrant visa is neither necessary nor the lease restrictive means to achieve any compelling purpose.

101. The Embassy's refusal to issue Plaintiff Colindres Juarez an immigrant visa based solely on his purely aesthetic tattoos is discriminatory.

102. There is no rational relationship between the Embassy's refusal to issue Plaintiff Colindres Juarez an immigrant visa based on his purely aesthetic tattoos and any legitimate state interest.

103. As a direct and proximate result of the Embassy's unlawful refusal under color of law to issue Plaintiff Colindres Juarez an immigrant visa, Plaintiffs have suffered and will continue to suffer injury.

*Id.*, ¶¶ 98–103.  Those paragraphs are a paradigmatic example of the kind of pleading the Supreme

Court rejected in *Twombly* and *Iqbal*:  they comprise mere "labels and conclusions," in "a formu-

laic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, devoid of "sufficient

factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570).

        In fact, the claim fails even to provide an accurate or complete "recitation of the elements

of [an equal protection] cause of action."  *Twombly*, 550 U.S. at 555.  For example, invoking the

terms "national origin," "nationality," and "alienage," Plaintiffs seek application of heightened

scrutiny, stating that the government's action was without "substantial justification" and was "nei-

ther necessary nor the least restrictive means to achieve any compelling purpose."  ECF No. 2,

¶¶ 99–100.  But that ignores the fact that "[d]istinctions on the basis of nationality may be drawn

in the immigration field by the Congress or the Executive.  So long as such distinctions are not

wholly irrational they must be sustained."[11]  *Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir.

1979) (internal citations omitted); *see also Malek-Marzban v. INS*, 653 F.2d 113, 116 (4th Cir.

1981) (rejecting an equal protection challenge because "[w]hen the government classifies aliens

on the basis of nationality, the classification must be sustained if it has a rational basis"); *CASA de*

*Md., Inc. v. Trump*, 355 F. Supp. 3d 307, 324–25 (D. Md. 2018) ("In the immigration context, a

government's classifications on the basis of nationality are sensibly reviewed deferentially, as

nearly all immigration policies involve some degree of classification on the basis of nationality.").

The same is true of distinctions based on alienage.  *See, e.g.*, *Korab v. Fink*, 797 F.3d 572, 579

---

[11] In *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, the D.C. Circuit found that "nationality-based regulations [ran] athwart" of 8 U.S.C. § 1152(a), which states that the government "has no authority to discriminate on the basis of national origin, except by promulgating regulations in a time of national emergency."  45 F.3d 469, 473 (D.C. Cir. 1995), *vacated on other grounds*, 519 U.S. 1 (1996).  In doing so, however, the court recognized the government's power under the Constitution "to make nationality-based distinctions."  *Id.* (discussing *Narenji*).

(9th Cir. 2014) ("Although aliens are protected by the Due Process and Equal Protection Clauses, this protection does not prevent Congress from creating legitimate distinctions either between citizens and aliens or among categories of aliens and allocating benefits on that basis." (citing *Matthews v. Diaz*, 426 U.S. 67, 78 (1976))); *McLean v. Crabtree*, 173 F.3d 1176, 1186 n.11 (9th Cir. 1999) ("[I]n cases where federal interests predominate, judicial scrutiny of alienage classifications is relaxed to a 'rational basis' standard." (citing *Matthews*, 426 U.S. at 83)); *Abreu v. Callahan*, 971 F. Supp. 799, 810–11 (S.D.N.Y. 1997) ("[T]he level of judicial scrutiny of federal classifications involving alienage is far more deferential than that applied to the state. This difference is rooted in part in the difference in the language of the constitutional provisions applicable to the federal and state governments, respectively. It is grounded also in the national interest in regulating the circumstances in which aliens are permitted to reside in the United States, an interest which derives from uniquely federal foreign relations and war power concerns and which finds no counterpart at the state level." (footnotes omitted)). Beyond misidentifying the proper standard of review, Plaintiffs have not suggested any way in which any such distinction made in this case was "wholly irrational," *Narenji*, 617 F.2d at 747, as is their burden at this stage of the proceedings. *See, e.g.*, *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) (per curiam) ("Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.'" (quoting *Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994))).[12] Nor do they so much as hint at what "discrete and insular" minority Colindres Juarez might belong to that would invite more searching scrutiny.

---

[12] To the extent that Plaintiffs attempt to make a "class of one" equal protection claim based on Colindres Juarez's tattoos, the same pleading standard applies. *See, e.g.*, *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 75 (D.D.C. 2015).

Furthermore, "a viable equal protection claim . . . must allege that similarly situated persons were intentionally treated differently and the facts pled must be specific." *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 160 (D.D.C. 2018) (ellipses in original) (quoting *Ramirez v. Walker*, 199 F. App'x 302, 307 (5th Cir. 2006)).  The complaint fails to allege that "similarly situated persons were intentionally treated differently" and contains no facts—let alone specific facts—that would support such an inference.  In short, even if it is legally permissible to state a claim for an equal protection violation arising from the denial of a spouse's visa application, Plaintiffs have failed to do so here.

In the absence of a plausible equal protection or due process claim, Plaintiffs do not fit within the exception for consular non-reviewability for decisions that burden a constitutionally protected right unless they can show a putative violation of the First Amendment.

3.    First Amendment

In *Mandel*, the Supreme Court recognized that a visa denial that burdened a First Amendment right could be subject to a limited judicial inquiry into whether the decision was facially legitimate and bona fide.  408 U.S. at 770.  More specifically, the plaintiffs in *Mandel* claimed that the denial of a visa to a journalist seeking to participate in an academic conference in the United States burdened their "right to receive information and ideas." *Id.* at 756–57, 762 (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)).  That is, *Mandel* dealt with "[t]he right of expressive association—the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion." *McCabe v. Sherrett*, 12 F.3d 1558, 1563 (11th Cir. 1994).  Here, the complaint does not assert with sufficient factual particularity any violation of a right of "*expressive association.*" *Id.* (emphasis added).  Indeed, like their equal protection claim, the complaint's

articulation of Plaintiffs' First Amendment claim is conclusory; it alleges only that "[t]he First Amendment to the United States constitution prohibits infringement upon the rights to free speech, expression, and association" and that the government's "refusal to issue Colindres Juarez an immigrant visa infringes upon and suppresses the rights of Plaintiffs to free speech, expression, and association."  ECF No. 2, ¶¶ 105–106.  As such, the claim provides "[no] more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and is dismissed on that basis.  *Twombly*, 550 U.S. at 555.

At best, Plaintiffs appear to be asserting a violation of Colindres' right to *intimate* association—the right "encompass[ing] the personal relationships that attend the creation and sustenance of family," which some courts have grounded in the First Amendment.  *McCabe*, 12 F.3d at 1563 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–20 (1984)*.*  Notably, then, Plaintiffs do not allege an infringement of "[t]he right of expressive association" that was at issue in *Mandel*.  Rather, the claim is merely a rehash of Plaintiffs' due process claims concerning an infringement of their right to marry who they wish without interference from the government.  *See* Section III.B.1, *supra*.  Courts have held that a claim that government action burdens the right to marriage is analyzed identically whether it has been cast as a due process right or an associational right—that is, "[t]he nominal source of th[e] right . . . does not alter [the] analysis."  *Muir v. Decatur Cty.*, 917 F.3d 1050, 1053–54 (8th Cir. 2019) (final alteration added) (quoting *Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998)); *see also Montgomery v. Carr*, 101 F.3d 1117, 1131 (6th Cir. 1996) ("[S]tate action impinging on the right to marry is to be reviewed in the same fashion whether advanced on the theory that it violates substantive due process or advanced on the theory that it violates the First Amendment's right to intimate association."); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995) (asserting that "[a]lthough the right to marry enjoys independent

protection under both the First Amendment and the Due Process Clause, the Supreme Court has

held that the same analysis applies in each context").  And, as noted, the D.C. Circuit has rejected

the argument that a citizen spouse's constitutional rights are burdened when the government denies

an alien spouse the right to live in this country.  *See Swartz*, 254 F.2d at 339; *see also Mostofi*, 841

F. Supp. 2d at 209, 212 (applying the doctrine of consular non-reviewability to claims under both

the First Amendment and the Fifth Amendment because the "plaintiff's constitutional rights [were]

not implicated by defendants' decision to deny her alien spouse entry into the United States").

Because Plaintiffs have failed to allege "a cognizable constitutional violation on which to

hang their hats," that exception to the doctrine of consular non-reviewability cannot save their

complaint.  *Rohrbaugh*, 394 F. Supp. 3d at 134.

4.      Statutory Claims

Plaintiffs have also alleged that the denial of Colindres Juarez's visa violated their rights

under the APA and the INA.  As noted, generally, a statutory claim based on an adverse consular

decision is also barred by the doctrine of consular non-reviewability.  *See, e.g.*, *Saavedra Bruno*,

197 F.3d at 1164 ("With respect to purely statutory claims, courts have made no distinction be-

tween aliens seeking review of adverse consular decisions and the United States citizens sponsor-

ing their admission; neither is entitled to judicial review.").  However, there is also an exception

where a "statute expressly authoriz[es] judicial review of consular officers' actions."  *Baan Rao*

*Thai Rest.*, 985 F.3d at 1025 (quoting *Saavedra Bruno*, 197 F.3d at 1159).  The D.C. Circuit has

expressly held that the APA does not authorize review of consular visa decisions.  *See Saavedra*

*Bruno*, 197 F.3d at 1158; *see also Rohrbaugh*, 394 F. Supp. 3d at 131 (stating, "The APA [ ] does

not provide the [plaintiffs] a vehicle for judicial review" and collecting cases); *Udugampola*, 70

F. Supp. 3d at 42 n.7 ("[T]he APA does not provide the plaintiffs with a cause of action to assert

a claim otherwise barred by the doctrine of consular non-reviewability.").  As to the INA, Plaintiffs cite only two provisions in the operative complaint:  8 U.S.C. § 1151(b)(2)(A)(i) and 8 U.S.C. § 1152(a)(1)(A).  Section 1151(b)(2)(A)(i) states that "immediate relatives," defined generally as "the children, spouses, and parents of a citizen," are "not subject to the worldwide levels or nu-merical limitations" on certain categories of immigrants set in sections 1151(c), (d), and (e).[13] Section 1152(a)(1)(A) is a non-discrimination provision stating that, "except as specifically pro-vided" elsewhere in the statute, "no person shall receive any preference or priority or be discrimi-nated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."  As an initial matter, the D.C. Circuit has stated, categorically, that "the immigration laws"—of which sections 1151(b)(2)(A)(i) and 1152(a)(1)(A) are indisput-ably a part—"preclude judicial review of consular visa decisions."  *Saavedra Bruno*, 197 F.3d at 1162.  Rather, section 1104(a) of the INA itself "confers on consular officers *exclusive authority* to review applications for visas, precluding even the Secretary of State from controlling their de-terminations."  *Id.* at 1156 (emphasis added) (citing 8 U.S.C. §§ 1104(a), 1201(a)); *see also, e.g.*, *Jafari v. Pompeo*, 459 F. Supp. 3d 69, 74 (D.D.C. 2020) (stating, "The doctrine of consular non-reviewability recognizes that Congress has empowered consular officers with the exclusive au-thority to review a proper application for a visa when made overseas" and citing, as support, three provisions of the INA).  Given those statements, it seems clear that, if a statutory provision provid-ing for judicial review of consular visa decisions currently exists, it will not be found in the INA.

---

[13] For example, section 1151(c)(1)(A) sets the "worldwide level of family-sponsored immigrants" based on a specific calculation:  480,000 minus "the sum of the number computed under [section 1151(c)(2)] and the number computed under [section 1151(c)(4)]," plus "the number (if any) computed under [section 1151(c)(3)]," but in no event shall the number be less than 226,000.  8 U.S.C. § 1151(c)(1)(A).  Similar calculations are set out for worldwide levels of employment-based immigrants and of diversity immigrants. *See* 8 U.S.C. § 1151(d), (e).

More, nothing in the INA provisions cited by Plaintiffs could be construed as meeting the stringent requirement that a statute "*expressly* authoriz[e] judicial review of consular officers' actions." *Saavedra Bruno*, 197 F.3d at 1159 (emphasis added).  For example, in *Baan Rao Thai*, the D.C. Circuit held that a treaty between Thailand and the United States that, among other things, provided for a "'qualified right of entry' for Thai and U.S. nationals into one another's country" as well as a right to "free access to courts" did not meet that high bar, stating that "[a]lthough 'free access' to courts 'both in defense and in the pursuit of their rights' has a broad sound, it by no means overrides the longstanding limit on judicial review." 985 F.3d at 1025.   Section 1152(a)(1)(A) provides even less of a hook—it simply fails to address judicial review (or even mention courts) at all.

This outcome is hardly surprising.  Plaintiffs have failed to point to a single case finding statutory authorization for judicial review of a consular visa decision, and the Court has found none. *See Saavedra Bruno*, 197 F.3d at 1159–60 ("In view of the political nature of visa determinations and *the lack of any statute expressly authorizing judicial review of consular officers' actions*, courts have applied . . . the doctrine of consular nonreviewability." (emphasis added)); *cf., e.g.*, *Aboutalebi v. Dep't of State*, No. 19-CV-2605, 2019 WL 6894046, at *4 (D.D.C. Dec. 18, 2019) ("Aboutalebi has not pointed to any law that would permit this Court to review her visa denial.").  Therefore, Plaintiffs' statutory claims shall be dismissed pursuant to the doctrine of consular non-reviewability.

*     *     *     *     *

Because Plaintiffs have not shown either that the decision denying Colindres Juarez's visa application burdened Colindres' constitutional rights or that a statute expressly authorized judicial review of the decision, the claims do not fall into any exception to the doctrine of consular non-

reviewability. *See Baan Rao Thai Rest.*, 985 F.3d at 1025.  It is therefore unnecessary to analyze whether Colindres Juarez's visa application was denied on the basis of a facially legitimate and bona fide reason or any allegation of bad faith.  *See, e.g.*, *Rohrbaugh*, 394 F. Supp. 3d at 134 ("Thus ends this case.  Without a cognizable constitutional violation [or statutory provision] on which to hang their hats, the [plaintiffs] cannot avoid the doctrine of consular non-reviewability."); *see also Polyzopoulos v. Garland*, Civil Action No. 20-0804, 2021 WL 1405883, at *6–7 (D.D.C. Apr. 14, 2021) (noting that a plaintiff must plausibly allege that the visa denial is encompassed within the exception to consular non-reviewability before a court must assess any claim of bad faith), *appeal dismissed*, No. 21-5110, 2021 WL 4768118 (D.C. Cir. Oct. 5, 2021).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 10) will be **GRANTED**.  An order dismissing this case will be filed concurrently with this Memorandum Opinion.


Date:   December 14, 2021                    _____
                                            G. MICHAEL HARVEY
                                            United States Magistrate Judge